IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW B. COONEY and DIANE A. COONEY,<br><br>    *Plaintiffs,*<br><br> v.<br><br>STEVEN M. DUNNER, *et al.*,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 16-3707 |

**PAPPERT, J.**                                August 31, 2017

<u>**MEMORANDUM**</u>

**I.**

**A.**

Andrew and Diane Cooney's home at 143 South Baringer Street in Bucks County's Silverdale Borough sits on a lot created pursuant to a Major Subdivision Plan. That Plan was revised and recorded with the Bucks County Recorder of Deeds on August 14, 2006. (Am. Compl. ¶ 12.) Under the terms of the Plan, the Cooney's Property is 3.0744 acres spread across two parcels: "Lot 1" and "Parcel C." (*Id.* ¶¶ 12, 14–15.) The Cooney's home sits on Lot 1, while Parcel C is designated by the Plan to remain as open space. (*Id.* ¶¶ 15(a)–(b).) Parcel C is effectively landlocked: it cannot be accessed without crossing over either Lot 1 or a neighbor's property. (*Id.* ¶ 18.) The Major Subdivision Plan accordingly requires that Parcel C is "to remain with Lot 1." (*Id.* ¶ 17.) As a result, the two parcels that make up the Property are collectively known by a single address and single tax parcel number. (*Id.* ¶ 16.)

The Cooneys are the not first to own the Property since it was subdivided. On September 15, 2006, Paul and Vicki Fox conveyed the entire Property by deed to Steven Dunner and Daniel Kelly (the "Fox Deed"). (*Id.* ¶¶ 19, 22.) The Fox Deed was recorded on September 26. (*Id.* ¶ 21.) The Property was conveyed again on November 17, 2006, when Dunner and Kelly deeded it to David and Cynthia Kern (the "Dunner Deed"). (*Id.* ¶ 23.) The Kerns recorded the Dunner Deed on March 30, 2007. (*Id.* ¶ 25.)

The description of the Property contained in the Dunner Deed spawned this litigation. The metes and bounds description only describes Lot 1—that is, it omits any description of Parcel C. (*Id.* ¶ 26.) That is the case despite the Major Subdivision Plan's requirement that Parcel C is "to remain with Lot 1." *See* (*id.* ¶ 17). Despite its incomplete metes and bounds description, the Dunner Deed includes the correct address and tax parcel number by which the whole Property is identified. (*Id.* ¶ 26.)

The Kerns sold the Property to Andrew and Diane Cooney on June 14, 2013 (the "Kern Deed"). (*Id.* ¶ 23.) The Kern Deed was recorded on June 21, 2013. (*Id.* ¶ 41.) The Kerns and Cooneys believed the sale was for both Lot 1 and Parcel C. (*Id.* ¶ 38.) The Cooneys received a report from the Multiple Listings Service, which described the Property as 3.07 acres—the combined area of Lot 1 and Parcel C, *see* (*id.* ¶¶ 30–32), and the Kerns represented to the Cooneys that the Property included both Lot 1 and Parcel C. (*Id.* ¶ 33.) Nevertheless, the Kern Deed repeated the same metes and bounds description as the Dunner deed, pertaining only to Lot 1. (*Id.* ¶ 42.)

On June 14, 2013, the Cooneys executed a deed conveying title in the property to themselves in order to add their middle initials ("the "Deed of Correction"). (*Id.* ¶¶ 43, 46.) They recorded the Deed of Correction June 21. (*Id.* ¶ 45.) The Deed of Correction

also repeated the incomplete metes and bounds description contained in the previous two deeds. (*Id.* 47.) Like the Kern and Dunner Deeds before it, however, the Deed of Correction identifies the Property by its correct tax parcel number and street address. (*Id.*)

Because the Dunner Deed, the Kern Deed and the Deed of Correction do not include a metes and bounds description of both parcels that make up the Property, Parcel C may appear to be recorded in Dunner's name. As a result, the Cooneys contend that title to the property is unmarketable. (*Id.* ¶¶ 58–59.) Moreover, several third parties could claim to hold liens against Parcel C based on Dunner's liabilities. Three such liabilities are relevant to this case: First, on September 11, 2009, the IRS filed a notice of federal tax lien against Dunner for $239,932.18 in unpaid taxes. (*Id.* ¶ 52.) Next, on April 1, 2014, Bucks County obtained a $100,000 judgment in the Bucks County Court of Common Pleas against Dunner for unpaid taxes. (*Id.* ¶ 51.) Finally, on October 17, 2012, Ally Financial Inc. won a $14,957.65 judgment against Dunner also in the Bucks County Court of Common Pleas. (*Id.* ¶ 50.)

**B.**

On May 5, 2016, the Cooneys sued in Bucks County to quiet title to the Property and reform the Dunner Deed, the Kern Deed and the Deed of Correction to include a metes and bounds description of both Lot 1 and Parcel C. (ECF No. 1 at 10–20.) The Cooneys named Dunner, Kelly, the Kerns, Ally Financial, Inc., Bucks County and the IRS as defendants. *See* (*id.*). The United States removed the case on July 7, 2016 pursuant to 28 U.S.C. §§ 1442, 1444 and 2410. (ECF No. 1.) It then answered the Complaint. (ECF No. 3.) Bucks County and the Kerns also timely answered the

removed Complaint.  (ECF Nos. 8 & 9.)  Dunner, Kelly, and Ally failed to file answers, and the Cooneys requested entry of default against each of them on July 27, 2016 (ECF No. 6.)  The Clerk of Court entered default the next day.

On February 1, 2017, the Cooneys settled their claims against the Kerns, Bucks County and the United States.  *See* (Settlement Agmt., at 2, ECF No. 21-5).  Under the terms of the settlement, the Cooneys and the Kerns agreed to pay between them $15,000 to the United States and Bucks County; in exchange, the County and the United States agreed to release their liens on Parcel C.  (*Id.* at 5, ¶ 2.)  The Settlement Agreement also contains a "mutual limited release" provision, in which the Cooneys, the Kerns, the County and the United States agree to release one another from all claims and debts "presently known or unknown, matured or unmatured, arising now or in the future" they may have against each other related to any liens and judgments against Parcel C.  (*Id.* at 5–6, ¶ 4.)  The Kerns, Bucks County and the United States also stipulated to reformation of the Kern Deed and the Deed of Correction.  *See* (Stipulation, ECF Nos. 18 & 20.)

As contemplated by the Settlement Agreement, the Cooneys now move for default judgment against Dunner and Ally.  In so doing, they seek to quiet title to Parcel C and reform the Dunner Deed, the Kern Deed and the Deed of Correction.  *See* (ECF No. 21).  For the following reasons, the motion is granted.

### III.

Rule 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.[1] *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). Three factors guide whether default judgment should be granted: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendants appear to have a litigable defense; and (3) whether the defendants' delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

The *Chamberlain* factors support entry of default judgment. First, denying the motion will prejudice the Cooneys. "Considerable delays," especially those that might "stretch on indefinitely," are sufficient to show prejudice to the plaintiff. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013); *see also State Farm Fire & Cas. Co. v. Hunt*, No. 14-06673, 2015 WL 1974772, at *4 (E.D. Pa. May 4, 2015) (holding that plaintiff "is prejudiced by [defendants'] ignoring this litigation, protracting the dispute between the parties and effectively foreclosing [plaintiff] from relief for the foreseeable future"); *DirecTV, Inc. v. Asher*, No. 03-1969,

---

[1] The Cooneys personally served Dunner in Pennsylvania, *see* Bucks Sheriff's Return, *Cooney v. Dunner*, (No. 2016-02721, Pa. Ct. Com. Pl. 2016), and the Court may exercise personal jurisdiction over Dunner, who was an inmate at the Quehanna Boot Camp in Pennsylvania at the time this suit was filed, *see id.*
    The Cooneys also properly served Ally. (ECF No. 6-3, at 45–46); *see also* FED. R. CIV. P. 4(h)(1)(B). The Court may also exercise specific personal jurisdiction over Ally in this action consistent with traditional notions of fair play and substantial justice. "Courts have held that a party who chooses to initiate suit as a plaintiff in a forum state thereby waives any objection to personal jurisdiction in a suit lodged against it in the same state, at least in cases where the two suits involve the same subject matter." *H.A.S. Protection, Inc. v. Senju Metal Indus. Co., Ltd.*, No. 03-1215, 2003 WL 23419852 (citing *Gen. Contracting & Trading Co., L.L.C. v. Interpole, Inc.*, 940 F.2d 20, 24 (1st Cir. 1990)). Ally sued Dunner in the Pennsylvania courts; its status as a judgment creditor is, among other things, at the heart of this case.

2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"). The Defendants have failed to answer or otherwise appear in this case, leaving the Cooneys with no recourse other than to file for default judgment. *See, e.g.*, *Moody Nat'l FFI Meadowlands Mt, LLC v. Gager*, No. 12-2124, 2013 WL 622128, at *10 (D.N.J. Jan 24, 2013).

It does not appear that the Defendants have a litigable defense. By failing to respond to the Complaint, the defaulted defendants have not offered any defense; courts in this district have considered such a failure to suggest a lack of a litigable defense. *See, e.g.*, *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261 (E.D. Pa. 2011). Given that the Dunner Deed, the Kern Deed and the Deed of Correction sought to transfer Lot 1 and Parcel C together as required by the Major Subidivison Plan, the defaulting Defendants do not appear to have a litigable defense to the Cooney's claims.

Finally, the defaulting Defendants' failure to "engage[ ] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009). While Dunner's incarceration does not suggest that his culpable conduct led to the entry of default, the first two *Chamberlain* factors weigh in favor of entering default judgment. *Cf. also Jimenez v. Rosenbaum-Cunningham, Inc.*, No 07-1066, 2010 WL 1303449, at *6 n.7 (E.D. Pa. Mar. 31, 2010) ("The fact that [a defendant] is incarcerated does not render her incompetent or excuse her from participating in these proceedings."). The Defendants have been served with the

Complaint and are therefore put on notice as to their obligation to file a responsive pleading. The "equities of the situation and the need for the efficacious resolution of controversies" thus weigh in favor of entering default judgment. *Summit Tr. Co.*, 2013 WL 3967602, at *4 (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). The Cooney's Motion for Default Judgment is granted.

    An appropriate Order follows.

BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.